IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.C.D., INC. t/a J.L. TERREL'S ) | |
| ) | |
| and ) | |
| ) | |
| TERREL'S PRO FINISHES, INC., ) | Civil Action No. 02-CV-2645 |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Judge Surrick |
| ) | |
| SHERWIN-WILLIAMS AUTOMOTIVE ) | |
| FINISHES CORP., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

Plaintiffs J.C.D., Inc. and Terrel's Pro Finishes, Inc. (together, "Pro Finishes") sell auto-body paint and other products to automobile dealers and body shops. For less than two years, Pro Finishes sold paint distributed by Sherwin-Williams Automotive Finishes, Corp. Pro Finishes purchased and resold Sherwin-Williams paint under the terms of a Direct Jobber Agreement. When Sherwin-Williams notified Pro Finishes that it would terminate the Jobber Agreement, Pro Finishes sued.

Pro Finishes complains that Sherwin-Williams terminated the Jobber Agreement without cause and then sold paint directly to Pro Finishes' customers. But the agreement expressly authorized Sherwin-Williams to do just these things. Because it did, Sherwin-Williams is entitled to judgment on the pleadings.

**ALLEGATIONS OF THE COMPLAINT**

In the summer of 2000, Pro Finishes entered into a Direct Jobber Agreement with defendant Sherwin-Williams. *See* Compl. ¶ 5. The two-page Jobber Agreement authorized Pro

Finishes to purchase and distribute Sherwin-Williams auto-body paint. *See* Jobber Agreement ¶ 1.1 (attached to the Complaint as Ex. A).

The Jobber Agreement expressly provided that Pro Finishes' appointment was "non-exclusive." *Id.* ¶¶ 1.1, 4.1. Sherwin-Williams retained the right to appoint "additional jobbers in any geographical area[,] including the same geographical area . . . serviced by" Pro Finishes. *Id.* ¶ 4.1. Sherwin-Williams retained the right to "sell Products directly to any jobber and/or to any End User in any geographical area[,] including the same geographical area . . . serviced by" Pro Finishes. *Id.* ¶ 4.2. ("End Users" are "customers." *Id.* ¶ 1.2.) Both parties retained the right to terminate the agreement "without cause at any time . . . by giving written notice to the other party at least thirty (30) days prior to the proposed termination date." *See Id.* ¶ 5.1.

Pro Finishes itself pleads that it "has been unable to pay" Sherwin-Williams for paint and other materials supplied to Pro Finishes under the Jobber Agreement. *See* Compl. ¶¶ 19, 22, 25. On April 3, 2002, Sherwin-Williams gave written notice of termination 30 days thereafter. *Id.* ¶ 34-35. Pro Finishes filed this action on April 30, 2002.

Pro Finishes alleges nine separate claims for relief arising from the termination of the Jobber Agreement. The list includes a request for specific performance, breach of a duty of good faith, fraud, detrimental reliance, interference with contractual relations, misappropriation of trade secrets, breach of fiduciary duty, commercial disparagement, and violations of the Sherman and Clayton Acts. Pro Finishes initially sought, but later abandoned a request for, preliminary injunctive relief to forestall the termination's effective date.

Though the titles vary, all of Pro Finishes' claims share the same factual premise. Pro Finishes essentially complains that Sherwin-Williams terminated the Jobber Agreement

PII-1075165v1

without cause and then sold products directly to Pro Finishes' customers.  But the Jobber

Agreement authorized both parties to terminate their relationship without cause.  It authorized

Sherwin-Williams to sell paint to any customer anywhere.  It authorized Sherwin-Williams to

sell paint directly to Pro Finishes' customers.  Sherwin-Williams is entitled to judgment on the

pleadings.

<u>ARGUMENT</u>

I.    **Ohio Law Governs All Claims Arising From The Parties' Relationship.**

The Jobber Agreement provides that "all questions concerning the validity,

interpretation or performance of any of its terms or provisions, or of any rights or obligations of

the parties hereto, shall be governed by and resolved in accordance with the laws of the State of

Ohio."  *See* Jobber Agreement ¶ 6.5.  To determine the effect of this choice-of-law provision,

federal courts situated in Pennsylvania look to Pennsylvania's conflicts-of-law rules.  *Cf. Kruzits*

*v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (federal court sitting in diversity

applies the conflicts-of-law rules of the forum state).

Pennsylvania courts generally respect the parties' intent and enforce contractual

choice-of-law provisions.  *See Kruzits*, 40 F.3d at 55.  These choice-of-law provisions will also

govern tort claims that arise between the parties if the provision is sufficiently broad and evinces

an intent to govern the parties' entire relationship.  *Corestates Bank v. Signet Bank*, No. CIV A

96-3199, 1996 WL 482909 (E.D. Pa. Aug. 26, 1999) (all unreported authority attached as Exhibit

A); *Composiflex v. Advanced Cardiovascular Sys., Inc.*, 795 F. Supp. 151, 157 (W.D. Pa. 1992).

In *Corestates Bank*, this Court considered the effect of a choice-of-law provision

similar to the one set forth in the Jobber Agreement.  The *Corestates Bank* provision stated that

PII-1075165v1

the "Agreement and the rights and obligations of the parties hereunder shall in all respects be

governed by, and construed in accordance with, the internal laws of the Commonwealth of

Virginia . . . , including all matters of construction, validity and performance."  1996 WL 482909,

at *5 n.3.  This court concluded that the clause embraced the plaintiff's tort claims for fraud and

negligent misrepresentation and applied Virginia law.  *Id.*; *see also Composiflex*, 795 F. Supp. at

157 (construing a similar clause to govern tort claims).

The Jobber Agreement's choice-of-law provision similarly covers the various

"rights" and "obligations" of its signatories and therefore reaches the tort and other state-law

claims alleged by Pro Finishes.  Ohio law both governs and bars these claims.[1]

## II.    If Not Abandoned With Its Request For Preliminary Injunctive Relief, Pro Finishes' Request For Specific Performance Fails At The Pleading Stage.

Pro Finishes seeks specific performance of the Jobber Agreement.  *See* Compl.

¶¶ 44-50.  But Pro Finishes fails to plead facts that establish a breach of any provision of that

agreement or that otherwise support a claim for specific performance.

The "breach" that Pro Finishes identifies is Sherwin-Williams' claimed failure to

sell products in conformance with its own "policies and programs."  *See id.* ¶ 46.  But Pro

Finishes fails to identify any Sherwin-Williams "policy" or "program."  It alleges no facts

supporting a "policy" or "program" violation.  Rather, Pro Finishes factually alleges only that

Sherwin-Williams failed to reimburse Pro Finishes for payments that Pro Finishes apparently

owed to third parties under the terms of unspecified other agreements.  *Id.* ¶¶ 46-47.  These other

agreements are not attached to the complaint.  Their terms are unstated.  The complaint does not

seek their specific performance.

---

[1] Pro Finishes claims would fare no better under Pennsylvania law.  Sherwin-Williams provides illustrative cites to Pennsylvania cases that support this conclusion where appropriate.

Specific performance, not surprisingly, requires allegations of breach. *See Monotube Pile Corp. v. Union Metal Corp.*, No. 1997 CV 01082, 1998 WL 401755, *3 (Ohio Ct. App. Mar. 9, 1998). Pro Finishes has failed to plead a breach of the agreement the terms of which it seeks to specifically enforce. Its claim fails for this reason alone.

Specific performance is also an equitable remedy. It is available only if there is no adequate remedy at law. *See Columbia Gas Transmission Corp. v. Larry H. Wright, Inc.*, 443 F. Supp. 14, 24 (S.D. Ohio 1977); *Goldfarb v. The Robb Report, Inc.*, 655 N.E.2d 211, 219 (Ohio Ct. App. 1995); *accord Petry v. Tanglewood Lakes, Inc.*, 522 A.2d 1053, 1056 (Pa. 1987).

Pro Finishes is not without a legal remedy. Paragraph 48 of the complaint itself purports to quantify the damages that Pro Finishes has incurred as a result of Sherwin-Williams' alleged non-compliance with the terms of the other agreements. Pro Finishes tallies the amount owed to the penny (*i.e.*, "$40,877.21"). Pro Finishes has calculated, with apparent precision, the amount of damages allegedly due should it ever sue on these other agreements. Pro Finishes pleads the existence of its adequate remedy at law. Its specific performance claim fails for this additional reason.

To the extent that Pro Finishes' specific performance claim can be read to call for an open-ended continuation of the Jobber Agreement, it still fails. The agreement itself authorizes termination without cause at any time on 30-days written notice. Pro Finishes has alleged no failure of notice.

This Court should dismiss Pro Finishes' specific performance claim.[2]

---

[2] Even if Pro Finishes had pled a claim for specific enforcement of the Jobber Agreement, the remedy remains unavailable to it. The agreement calls for Pro Finishes to perform various services (*e.g.*, market and distribute Sherwin-Williams products, maintain certain commercial facilities, maintain those facilities in specific ways, adequately staff those facilities, etc.). *See* Jobber Agreement ¶¶ 1.2, 2.1, 2.2. Courts refuse to specifically enforce the terms of service contracts. *See, e.g., Hoffman Candy & Ice Cream Co. v. Dep't of Liquor Control*, 96 N.E.2d 203 (Ohio 1950); *Goldfarb,* 655 N.E.2d at 219. Courts refuse because no mutuality of remedy exists.

### III.    Sherwin-Williams Owed Pro Finishes No Duty Of Good Faith.

Pro Finishes next alleges that Sherwin-Williams breached a "duty of good faith" by terminating the Jobber Agreement. *See* Compl. ¶¶ 51-59. But, with the exception of policyholders suing insurance companies and claimants seeking recovery for Uniform Commercial Code violations, Ohio law does not recognize an independent claim for breach of the duty of good faith. *See, e.g., Northeast Ohio College of Massotherapy v. Burek*, 759 N.E.2d 869, 875 (Ohio Ct. App. 2001); *Lakota Local School Dist. Bd. of Educ. v. Brickner*, 671 N.E.2d 578, 583-84 (Ohio Ct. App. 1996). Sherwin-Williams is not an insurer. Pro Finishes alleges no U.C.C. claim. Pro Finishes cannot recover for breach of a duty that Sherwin-Williams does not owe.

Even if Sherwin-Williams somehow did owe Pro Finishes a duty of good faith, "[t]he obligation of good faith cannot be used . . . to override express contract terms." *Belfance v. Standard Oil*, No. 14688, 1990 WL 203173, *4 (Ohio Ct. App. Dec. 12, 1990) (affirming summary judgment for defendant on claim for breach of the duty of good faith). Nor can a "decision to enforce" one's "contract rights" be "considered an act of bad faith." *Bennco Liquidating Co. v. Ameritrust Co. Nat'l Ass'n*, 621 N.E.2d 760, 762 (Ohio Ct. App. 1993) (same). Sherwin-Williams' decision to "enforce" its at-will termination "rights" cannot be "an act of bad faith."[3]

---

Courts are loathe to compel continued performance from a service provider against its will, so they refuse to compel continued payment by a service receiver. *See Goldfarb*, 655 N.E.2d at 219. Courts are also disinclined to oversee contractual performance when the contract covers an extended or uncertain time period. *Id.*

[3] Pennsylvania courts refuse to imply a duty of good faith where "(1) a plaintiff has an independent cause of action to vindicate the same rights . . . ; (2) such implied duty would result in defeating a party's express contractual rights . . . ; or (3) there is no confidential or fiduciary relationship between the parties." *See Agrecycle, Inc. v. City of Pittsburgh*, 783 A.2d 863, 867 (Pa. Commw. Ct. 2001). Pro Finishes' claim for breach of the duty of good faith is subject to each of the Pennsylvania grounds for refusal. Pro Finishes could allege a breach-of-contract claim to vindicate contractual rights that have been abridged. But none have been abridged, and no vindication is required. As it would under Ohio law, recognizing a good faith claim here would defeat Pro Finishes' contractual right to terminate the Jobber Agreement without cause at any time. And, as discussed in the pages that follow, Pro Finishes

**IV.    Pro Finishes Fails To State Claims For Either Fraud Or Detrimental Reliance.**

Pro Finishes' fraud and detrimental reliance claims are premised on alleged

representations or promises that the Jobber Agreement would be the start of a "long[-]term

relationship." *See* Compl. ¶¶ 60-71, 93-101.  The Jobber Agreement, however, expressly

authorizes Sherwin-Williams (and Pro Finishes, for that matter) to terminate the agreement

without cause at any time on written notice.  *See* Jobber Agreement ¶ 5.1.

The Jobber Agreement also informs its signatories not to rely on any

representations to the contrary.  It says that "[t]his Agreement embodies the entire understanding

and agreement between the parties relative to the subject matter hereof, and supersedes any

jobber agreements which may have been previously entered into" by the parties.  *Id.* ¶ 6.9.  It also

instructs that the agreement "may not be modified, changed or supplemented except by a written

instrument which is signed by an authorized representative of [both parties], which instrument

shall state that it is a modification of the Agreement."  *Id.* ¶ 6.6.

The Jobber Agreement is a fully integrated contract.  The alleged oral

representations or promises, even if made, cannot become terms of the agreement.  Nor can they

support reasonable reliance – an element of both fraud and detrimental reliance claims.  *See*

*Harris v. Equilon Enterprises, L.L.C.*, 107 F. Supp. 2d 921, 935-36 (S.D. Ohio 2000) (overruling

motion for leave to amend complaint to state fraud and promissory estoppel claims as futile

because "[u]nder Ohio law . . . [p]laintiff is precluded from relying upon prior or

contemporaneous oral representations that vary or contradict the terms of his written

agreements"); *Armstrong World Indus., Inc. v. Robert Levin Carpet Co.*, 1999 WL 387329, *5

(E.D. Pa. May 20, 1999) (quoting *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir.

---

has not pled a fiduciary relationship.

1996) (granting motion to dismiss fraud claim because "[t]he Pennsylvania parol evidence rule 'bar[s] consideration of prior representations concerning matters covered in the written contract, even those alleged to have been made fraudulently, unless the representations were fraudulently omitted from the contract'").

Pro Finishes cannot rely on oral assurances of a long-term relationship that directly contradict the at-will termination clause in the written Jobber Agreement.  The parol evidence rule and Pro Finishes' inability to plead reasonable reliance bar its fraud and detrimental reliance claims.[4]

## V.    Pro Finishes' Interference With Contractual Relations Claim Fails Because The Allegedly Offending Conduct Was Contractually Authorized.

To plead a claim for interference with contractual relations, Pro Finishes must allege the (1) existence of a contract, (2) Sherwin-Williams' knowledge of the contract, (3) Sherwin-Williams' intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages.  *See Sammarco,* 723 N.E.2d at 136; *accord Hess v. Gebhard & Co., Inc.*, 769 A.2d 1186, 1194 (Pa. Super. Ct. 2001) (citations omitted), *reversed on other grounds*, 2002 WL 31318802 (Pa. Oct. 16, 2002).  Justifiable interference with a business relationship is not actionable, even if the interference causes damages.  *See Sammarco*, 723 N.E.2d at 136-37.

Pro Finishes alleges that Sherwin-Williams intentionally interfered with Pro Finishes contractual relationships by contacting its customers and selling products to those

---

[4] Pro Finishes also fails to plead all of the elements of fraud with particularity.  Pro Finishes cannot carry its Rule 9(b) burden with references to vague comments about a "long-term relationship."  *See Scattergood v. Perelman*, 945 F.2d 618, 623 (3d Cir. 1991) (allegations fell short of 9(b) pleading standard).  The elements of fraud include (1) a representation of a fact, (2) that is material, (3) made with knowledge of falsity or reckless disregard for the truth or falsity of the representation, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance on the representation, and (6) damages.  *See Sammarco v. Anthem Insur. Co.*, 723 N.E.2d 128, 137-38 (Ohio Ct. App. 1998) (quoting *Burr v. Stark County. Bd. of Commrs.*, 491 N.E.2d 1101, syllabus paragraph two (Ohio 1986)).  Pro Finishes has failed to plead who made any representation of a "long-term relationship," when or where they made it, or even what was said.  Pro Finishes has failed to plead a representation of fact or any other element of fraud with the requisite particularity.

-8-

customers directly.  *See* Compl. ¶ 73-74.  But the Jobber Agreement expressly authorizes

Sherwin-Williams to do just that.  *See* Jobber Agreement ¶ 4.2.  "Committing an act specifically

anticipated by the contract does not support a claim for tortious interference . . . ."  *Sammarco*,

723 N.E.2d at 136-37 (granting motion to dismiss tortious interference claim, in part, because

alleged act was contractually authorized); *see also Bill Call Ford, Inc. v. Ford Motor Corp.*, 48

F.3d 201, 207 (6th Cir. 1995) (affirming grant of summary judgment and concluding that there

was no interference with contract as a matter of law because the allegedly tortious statements

were provided for in the contract); *accord Hess*, 769 A.2d at 1194-95 (affirming trial court's

dismissal of interference claims because there was no tortious interference when conduct was

justified under contractual covenant not to compete).

Because Sherwin-Williams' conduct was contractually authorized and therefore

justified, Pro Finishes' claim for tortious interference must fail.

**VI.    Pro Finishes' Misappropriation Of Trade Secrets Claim Fails For The Same Reason.**

To state a claim for misappropriation, Pro Finishes must plead facts that establish

that (1) a trade secret exists, (2) the trade secret was acquired as a result of a confidential

relationship, and (3) Pro Finishes was injured as a result of the unauthorized use of the secret.

*See, e.g., Suarez Corp. v. Seta Corp. of Boca, Inc.*, No. 5:91 CV 1566, 1991 WL 328029, *7

(N.D. Ohio Sept. 16, 1991); *accord Gilbert v. Otterson*, 550 A.2d 550, 555 (Pa. Super. Ct. 1988).

Pro Finishes must also establish that the alleged trade secret was confidential and that it took

precautions to protect the secrecy of the information.  *See Plain Dealer v. Ohio Dep't of Insur.*,

687 N.E.2d 661, 672 (Ohio 1997); *Biomedical Innovations, Inc. v. McLaughlin*, 658 N.E.2d

1084, 1087 (Ohio Ct. App. 1995) (granting summary judgment on misappropriation claim

because there was no evidence plaintiff took protective measures to guard the confidential nature

of the alleged trade secrets); *Northeast Ohio College of Massotherapy,* 759 N.E.2d at 878 (same).

Pro Finishes has not met its pleading burden.

Pro Finishes alleges that Sherwin-Williams misappropriated "information about [its] customers" that enabled Sherwin-Williams to contact and sell to those customers directly. *See* Compl. ¶¶ 80-86. Though it labels this customer information a "trade secret," Pro Finishes nowhere pleads that the material was not widely known, that it maintained the confidentiality of the material, or that it took any steps toward that end. Nor does Pro Finishes plead that it provided the information to Sherwin-Williams with any restrictions on its use.[5]

One reason for these pleading failures may be that car dealers and body shops are listed in the yellow pages. Their names, phone numbers, and addresses are anything but secret. Another reason is that the Jobber Agreement expressly contemplates access to customer information when it provides that Sherwin-Williams' "sales and technical representatives will assist Jobber, on a non-exclusive basis, relating to the sales of Products to End Users in Jobber's geographical vicinity." *See* Jobber Agreement at ¶ 3.2.

But even if Pro Finishes had pled facts that could support trade secret status for its customer information, its misappropriation claim would fail nonetheless. To prove misappropriation, a plaintiff must show that the defendant "made unauthorized use" of the confidential information, *see Suarez Corp.*, 1991 WL 328029, at *8, and this Pro Finishes cannot do. The Agreement expressly authorized Sherwin-Williams to sell directly to Pro Finishes'

---

[5] Though Pro Finishes alleges that the Jobber Agreement somehow "compelled" it to disclose confidential information to Sherwin-Williams (Compl. ¶ 82), it does so without benefit of citation to the agreement. There is no cite because the Jobber Agreement contains no such requirement. Voluntarily disclosing customer or other information to Sherwin-Williams -- a party contractually authorized to sell directly to Pro Finishes' customers -- itself puts the lie to the claim that the information was a guarded secret, trade or otherwise.

customers (Jobber Agreement ¶ 4.2), and therefore, any such sales efforts could not be wrongful.

## VII.    A Claim For Breach Of Fiduciary Duty Requires A Fiduciary Relationship.

Pro Finishes alleges that Sherwin-Williams breached a fiduciary duty owed to Pro Finishes by, among other things, terminating the Jobber Agreement and contacting customers directly.  *See* Compl. ¶¶ 87-92.  But Pro Finishes has not pled the existence of a fiduciary relationship.

A fiduciary relationship is generally one of special trust and confidence and one in which one party acts solely or primarily on behalf of the other party.  *See Umbaugh Pole Bldg. Co. v. Scott*, 390 N.E.2d 320, 323 (Ohio 1979) (no fiduciary relationship between a lending institution and its debtor); *Haluka v. Baker*, 34 N.E.2d 68, 70 (Ohio Ct. App. 1941) (no fiduciary agency relationship between liability insurer and insured with respect to settlement of third-party claim); *Greenberg v. Life Insur. Co.*, 177 F.3d 507, 521-22 (6th Cir. 1999) (affirming dismissal of claim for breach of fiduciary duty because there was no fiduciary relationship between insurance agent and insureds as a matter of law); *accord Polymer Dynamics, Inc. v. Bayer Corp.*, 2000 WL 1146622, *7-8 (E.D. Pa. Aug. 14, 2000) (granting motion to dismiss claim for breach of fiduciary duty because there was no fiduciary relationship between parties to a lease-purchase agreement). The undertaking must be mutual; both parties must understand the fiduciary nature of the relationship.  *See Umbaugh Pole Bldg. Co.*, 390 N.E.2d at 323; *Northeast Ohio College of Massotherapy*, 759 N.E.2d at 875.

Pro Finishes has not alleged that its relationship with Sherwin-Williams was one of special trust and confidence.  It has alleged no mutual understanding between the parties to

PII-1075165v1

that effect.  The Jobber Agreement, from its title to its terms, merely forms an arms-length

business relationship between these parties.

Paragraph 6.3 of the Jobber Agreement states that the "Jobber acknowledges and

agrees that Jobber is an independent contractor and is not an employee or agent of [Sherwin-

Williams] for any purpose" and that "[n]othing in this Agreement shall create an agency,

employment, franchise, partnership or joint venture relationship between [Sherwin-Williams]

and Jobber."  *See, e.g.*, *Northeast Ohio College of Massotherapy*, 759 N.E.2d at 875 (affirming

summary judgment on claim for breach of fiduciary duty because there was no fiduciary

relationship between independent contractor and employer); *cf. Glovaroma, Inc. v. Maljack*

*Productions, Inc.*, No. 96 C3985, 1998 WL 102742, *3 (N.D. Ill. Feb. 26, 1998) (granting

motion to dismiss claim for breach of fiduciary duty because no fiduciary relationship exists in a

distributor relationship).

Pro Finishes has failed to allege a fiduciary relationship.  Its claim for breach of

fiduciary duty must fail.

## VIII.  Pro Finishes' Commercial Disparagement Claim Should Be Dismissed Because Pro Finishes Cannot Allege That Sherwin-Williams Said Anything Disparaging.

Pro Finishes claims that Sherwin-Williams committed commercial disparagement

"by terminating the Jobber Agreement and by disclosing such termination to plaintiffs[']

customers."  *See* Compl. ¶¶ 102-105.  To state a claim for commercial disparagement, however,

Pro Finishes must plead that Sherwin-Williams "falsely and maliciously defame[d]" Pro Finishes'

property, causing it special damages.  *Consun Food Indus., Inc. v. Fowkes*, 610 N.E.2d 463, 469

(Ohio Ct. App. 1991); *International Visible Sys. Corp. v. Remington-Rand*, 65 F.2d 540, 542 (6th

Cir. 1933) (holding that complaint failed to plead a claim for commercial disparagement, which

court refers to as "slander of title"); *accord Redco Corp. v. CBS, Inc.* 758 F.2d 970 (3d Cir. 1985)

(applying Pennsylvania law and affirming summary judgment for defendant on commercial disparagement claim because alleged statements were not false factual representations).

Pro Finishes alleges no false statement made about its property.  It alleges no false statement at all.  Pro Finishes admits, and indeed grounds its lawsuit on the fact, that Sherwin-Williams terminated the Jobber Agreement.  Telling any customer this truth cannot give rise to liability.

## IX.    Pro Finishes' Claim For "Anti-Competitive Trade Practices" Under Federal Or State Law Merely Recites A Groundless Legal Conclusion.

In a single sentence, Pro Finishes concludes its complaint with the charge that Sherwin-Williams' "actions constitute prohibited anti-competitive trade practices under the Sherman Anti Trust Act [sic], the Clayton Anti Trust Act [sic] and the Laws of the Commonwealth of Pennsylvania and the State of Ohio."  *See* Compl. ¶ 107.  But a contract termination does not an antitrust claim make.

Pro Finishes pleads nothing more.  It does not tell us what statutory provisions are at issue.  It does not share with us what conduct is purportedly "anti-competitive."

Pleading this bare legal conclusion cannot survive a motion for judgment on the pleadings.  *Cf. American Franklin Life Insur. Co. v. Galati,* 776 F. Supp. 1054, 1056 (E.D. Pa. 1991) ("The court need not accept the non-movant's conclusions of law . . . ."); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

## CONCLUSION

For these reasons, Sherwin-Williams requests that this Court grant it judgment on the pleadings.

Respectfully submitted,

_____

James M. Jones (No. 81295)
Curt Vazquez (No. 54897)
JONES, DAY, REAVIS & POGUE
One Mellon Bank Center
500 Grant Street, 31st Floor
Pittsburgh, PA  15219
(412) 391-3939

John J. O'Donnell (No. 46462)
Joshua A. Gelman (No. 85438)
LAVIN, COLEMAN, O'NEIL, RICCI,
FINARELLI & GRAY
10th Fl., 510 Walnut Street
Philadelphia, PA  19106
(215) 627-0303

Attorneys for Defendant
Sherwin-Williams Automotive Finishes Corp.

-14-