SHERWIN-WILLIAMS AUTOMOTIVE FINISHES CORP.
DIMENSION
DIRECT JOBBER AGREEMENT

This Direct Jobber Agreement ("Agreement") is by and between the following parties.

"SW"
Sherwin-Williams Automotive Finishes Corp.
101 Prospect Avenue N.W.
Cleveland, Ohio 44115
Attn: Director of Sales - Distribution

"Jobber"
J.C.D., INC. T/A J.L. TERREL'S
111 S. BOLMAR ST.
WEST CHESTER, PA 19382
Attn:

SHIP TO: TERREL'S PRO FINISHES, INC.
77 MCCULLOUGH DRIVE
NEW CASTLE, DE 19720

1. **APPOINTMENT**

   1. SW hereby appoints Jobber as a non-exclusive jobber of those automotive refinish products distributed by SW under the "Dimension" trademark ("Products").
   2. The appointment of Jobber as a distributor of the Products is for the purpose of distribution of the Products by Jobber to commercial customers for consumption and/or end use by such customers ("End Users"). Jobber is not authorized to distribute the Products to any customer who purchases the Products for resale or further distribution.

2. **RESPONSIBILITIES OF JOBBER**

   1. Jobber shall maintain a commercial facility at the address set forth above for the proper storage, marketing, promotion and distribution of Products ("Facility"). The Facility shall be maintained and operated in a neat, attractive and efficient manner and shall be competently and adequately staffed by Jobber. Jobber shall not distribute Products from any location other than the Facility without the prior written consent of SW.
   2. Jobber shall purchase the Products from SW.
   3. Jobber shall exercise its best efforts to market the Products to End Users and to promote the goodwill and market reputation of SW and the Products. Jobber shall conduct its activities relating to the marketing of SW's Products: (i) in a professional manner; (ii) in accordance with the policies and procedures implemented by SW from time-to-time; and (iii) in accordance with the terms of this Agreement.
   4. Jobber shall be responsible for all credit and related functions relating to the sale of Products by Jobber to End Users including, but not limited to, order entry, invoicing and collection.
   5. Jobber shall permit SW or its authorized representative to inspect the Facility, during normal business hours, in order to review the sales, marketing and inventory levels of the Products.
   6. Jobber shall not utilize the patents, patent applications, trademarks, service marks, logos, symbols, copyrights, trade names and/or other proprietary rights related in any manner to the Products without the prior written consent of SW, which consent may be withheld and/or revoked by SW in its sole discretion.

3. **OBLIGATIONS OF SW**

   1. SW shall maintain an adequate stock of Products to service the needs of Jobber.
   2. SW shall maintain sales and technical representatives who are familiar with the Products. SW's sales and technical representatives will assist Jobber, on a non-exclusive basis, relating to the sales of Products to End Users in Jobber's geographical vicinity.
   3. SW shall sell Products to Jobber in accordance with the policies and programs of SW which are in effect at the time of purchase.

4. **RIGHTS RESERVED BY SW**

   1. The appointment of Jobber is non-exclusive. SW may appoint, license and/or otherwise contract with additional jobbers in any geographical area including the same geographical area which is serviced by Jobber.
   2. SW may sell Products directly to any jobber and/or to any End User in any geographical area including the same geographical area which is serviced by Jobber.
   3. SW may, in its sole and absolute discretion, establish a credit limit for Jobber in an amount which SW determines to be appropriate based upon the credit worthiness of Jobber. In the event that Jobber fails to comply with SW's credit and/or payment terms, or if Jobber's financial condition is impaired as determined by SW, SW may demand payment of all sums which are due and owing pursuant to this Agreement and may take all other actions which SW deems to be necessary.

5. **TERMINATION**

   1. This Agreement may be terminated without cause at any time by Jobber or SW by giving written notice to the other party at least thirty (30) days prior to the proposed termination date.
   2. If this Agreement is breached by SW or Jobber, the non-breaching party may terminate this Agreement immediately by sending written notice to the breaching party.
   3. SW has elected to enter into this Agreement with Jobber due to the unique qualifications, experience and integrity of Jobber. Accordingly, in the event that there is a change in the control or ownership of more than 20% of Jobber's business, assets or stock (in a single transaction or as a result of a series of transactions) subsequent to the date of this Agreement (each, a "Change in Control"), SW shall have the right to immediately terminate this Agreement by providing Jobber with written