**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| J.C.D., INC. t/a J.L. TERREL'S<br><br>and<br><br>TERREL'S PRO FINISHES, INC.,<br><br>Plaintiffs<br><br>v.<br><br>SHERWIN-WILLIAMS AUTOMOTIVE FINISHES CORP.,<br><br>Defendant. | ) | Civil Action No. 02-CV-2645<br><br>Judge Surrick |

**BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiffs J.C.D., Inc. and Terrel's Pro Finishes, Inc. (together, "Pro Finishes"), sell auto-body paint and other products to automobile dealers and body shops. For less than two years, Pro Finishes sold paint distributed by Sherwin-Williams Automotive Finishes Corp. Pro Finishes purchased and resold Sherwin-Williams paint under the terms of a Direct Jobber Agreement. After Pro Finishes stopped paying Sherwin-Williams for paint, Sherwin-Williams notified Pro Finishes that it would terminate the Jobber Agreement. Pro Finishes then sued.

Pro Finishes, both in its nine-count initial complaint and the six-count amended version, complains that Sherwin-Williams terminated the Jobber Agreement without cause and then sold paint directly to Pro Finishes' customers. But the Jobber Agreement expressly authorized Sherwin-Williams to do just these things. Because it did, neither complaint has stated a claim for relief.

The Amended Complaint, filed in response to Sherwin-Williams' motion for judgment on the pleadings, drops five counts and adds two, but the essential facts remain the

same. The written agreement that governed the relationship between the parties expressly authorized Sherwin-Williams to do the things about which Pro-Finishes complains.

This action, now twice-pled, should be dismissed with prejudice.

**THE ALLEGATIONS OF THE AMENDED COMPLAINT**

In the summer of 2000, Pro Finishes entered into a Direct Jobber Agreement with Sherwin-Williams. *See* Am. Compl., ¶ 11. The two-page Jobber Agreement authorized Pro Finishes to purchase and distribute Sherwin-Williams auto-body paint. *See* Jobber Agreement ¶ 1.1 (Compl., Ex. A).[1]

The Jobber Agreement expressly provided that Pro Finishes' appointment was "non-exclusive." *Id.* ¶¶ 1.1, 4.1. Sherwin-Williams retained the right to appoint "additional jobbers in any geographical area[,] including the same geographical area . . . serviced by" Pro Finishes. *Id.* ¶ 4.1. Sherwin-Williams retained the right to "sell Products directly to any jobber and/or to any End User in any geographical area[,] including the same geographical area . . . serviced by" Pro Finishes. *Id.* ¶ 4.2. ("End Users" are "customers." *Id.* ¶ 1.2.) Both Pro Finishes and Sherwin-Williams retained the right to terminate the Jobber Agreement "without cause at any time . . . by giving written notice to the other party at least thirty (30) days prior to the proposed termination date." *Id.*, ¶ 5.1.

Pro Finishes itself pleads that it "has been unable to pay" Sherwin-Williams for paint and other materials supplied to Pro Finishes under the Jobber Agreement. *See* Am. Compl., ¶¶ 23-25. On April 3, 2002, Sherwin-Williams gave written notice of termination 30 days thereafter. *Id.* ¶ 28.

---

[1] A partially legible version of a signed Direct Jobber Agreement appears to be attached to the original Complaint. Although the Amended Complaint indicates that its Exhibit A includes a signed copy of the Direct Jobber Agreement at issue, *see* Am. Compl., ¶ 11, the copy of the Amended Complaint served on Sherwin-Williams includes no signed contract.

Pro Finishes now asserts six claims for relief arising from the termination of the Jobber Agreement. The list includes claims for breach of contract, unjust enrichment, fraud, intentional interference with contractual relations, misappropriation of trade secrets, and federal antitrust law violations.

Though the titles vary, all of Pro Finishes' claims share the same factual premise. Pro Finishes essentially complains that Sherwin-Williams terminated the Jobber Agreement without cause and then sold products directly to Pro Finishes' customers. But the Jobber Agreement authorized both parties to terminate their relationship without cause. It authorized Sherwin-Williams to sell paint to any customer anywhere. It authorized Sherwin-Williams to sell paint directly to Pro Finishes' customers. This action should be dismissed.

## ARGUMENT

### I. Ohio Law Governs All State-Law Claims Arising From The Parties' Relationship.

The Jobber Agreement provides that "all questions concerning the validity, interpretation or performance of any of its terms or provisions, or of any rights or obligations of the parties hereto, shall be governed by and resolved in accordance with the laws of the State of Ohio." *See* Jobber Agreement ¶ 6.5. To determine the effect of this choice-of-law provision, federal courts in Pennsylvania look to Pennsylvania's conflicts-of-law rules. *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (federal court sitting in diversity applies the conflicts-of-law rules of the forum state).

Pennsylvania courts generally respect the parties' intent and enforce contractual choice-of-law provisions. *See Kruzits*, 40 F.3d at 55. These choice-of-law provisions will also govern tort claims that arise between the parties if the provision is sufficiently broad and evinces an intent to govern the parties' entire relationship. *Corestates Bank v. Signet Bank*, 1996 WL 482909 (E.D. Pa. Aug. 26, 1999) (all unreported authority is attached in Ex. A).

In *Corestates Bank*, this Court considered a choice-of-law provision which stated that the "Agreement and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed in accordance with, the internal laws of the Commonwealth of Virginia . . . , including all matters of construction, validity and performance." 1996 WL 482909, at *5 n.3. This Court concluded that the clause embraced the plaintiff's tort claims for fraud and negligent misrepresentation and applied Virginia law. *Id.*

The Jobber Agreement's choice-of-law provision similarly covers the various "rights" and "obligations" of its signatories and, therefore, reaches the contract, tort, and other state-law claims alleged by Pro Finishes. Ohio law both governs and bars these claims.[2]

**II. Pro Finishes Pleads No Facts That Could Support A Breach of Contract Claim.**

Pro Finishes alleges that Sherwin-Williams breached the Jobber Agreement. But Pro Finishes fails to plead facts that could support a breach. The "breach" that Pro Finishes identifies is Sherwin-Williams' claimed failure to sell products to Pro Finishes in conformance with its own "policies and programs." *See* Am. Compl., ¶ 32. But Pro Finishes fails to identify any Sherwin-Williams "policy" or "program." It alleges no facts supporting a "policy" or "program" violation. Instead, Pro Finishes alleges only that Sherwin-Williams failed to reimburse Pro Finishes for payments or credits that Pro Finishes apparently owed to third parties -- not under the terms of the Jobber Agreement -- but under the terms of some other unspecified agreements. *See* Am. Compl., ¶ 33; *see also id.*, ¶ 21.

These other agreements are not attached to the complaint. Their terms are largely unstated. Pro Finishes does not sue on them. What little is said about these other agreements reveals that they do not govern Sherwin-Williams' sales to Pro Finishes under the Jobber

[2] Pro Finishes, in its response to Sherwin-Williams' motion for judgment on the pleadings, did not dispute that Ohio substantive law applies. In any case, Pro Finishes' claims would fare no better under Pennsylvania law. Sherwin-Williams provides illustrative cites to Pennsylvania cases that support this conclusion.

Agreement, but relate to the credit terms of Pro Finishes' sales to its own customers. *See* Am. Compl., ¶ 21. The Jobber Agreement itself states that Pro Finishes "shall be responsible for all credit and related functions relating to the sale of Products" to its own customers, including "invoicing and collection." *See* Jobber Agreement ¶ 2.4.

Pro Finishes simply has failed to plead a breach of the Jobber Agreement -- the only contract on which it sues.[3]

**III. Pro Finishes' Unjust Enrichment Claim Cannot Be Maintained Because The Parties' Relationship Was Governed By A Contract.**

Pro Finishes alleges that it conferred benefits on Sherwin-Williams by entering into agreements with customers for the sale of Sherwin-Williams paint and by sharing certain customer information with Sherwin-Williams in connection with these sales efforts. *See* Am. Compl., ¶¶ 62-64. Pro Finishes claims that these facts support a claim for unjust enrichment. *Id.*, ¶¶ 65, 67.

But "a party to a contract cannot seek damages under the equitable theory of unjust enrichment when an express or implied contract covers the subject matter of that claim." *See Ankle & Foot Care Centers v. Infocure Systems, Inc.*, 164 F. Supp. 2d 953, 961 (N.D. Ohio 2001) (applying Ohio law and granting summary judgment for defendant); *see also County Council of Northampton County v. SHL Systemhouse Corp.*, 60 F. Supp. 2d 456, 469 (E.D. Pa. 1999) ("Under Pennsylvania law, the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract.'") (internal quotations omitted); *Mitchell v. Moore*, 729 A.2d 1200, 1203

---

[3] In one sentence, Pro Finishes also says that Sherwin-Williams did not meet obligations regarding the stocking of product and the provision of "assistance" to Pro Finishes. *See* Am. Compl.¶ 34. The sentence does not directly allege a breach, material or otherwise. Nor could it. Nowhere does Pro Finishes allege how any "stocking" failure could have affected its performance or occasioned damage. Pro Finishes itself pleads that it stopped receiving product because it stopped paying Sherwin-Williams. See Am. Compl., ¶¶ 23-25. Nor does Pro Finishes identify a single item of "assistance" that it was denied or any damage that arose therefrom.

(Pa. Super. Ct. 1999) ("[W]e may not make a finding of unjust enrichment, as has the trial court, where a written or express contract between the parties exists.").

The supply and distribution relationship between Pro Finishes and Sherwin-Williams was governed by an express contract -- a contract that required Pro Finishes to use "its best efforts to market" Sherwin-Williams' paint to "End Users." *See* Jobber Agreement ¶ 2.3. The subject matter of Pro Finishes' claims is that same supply and distribution relationship.

Pro Finishes' relationship with Sherwin-Williams was governed by a written contract. Pro Finishes can assert no unjust enrichment claim.

**IV. Pro Finishes Fails To State A Claim For Fraud.**

Pro Finishes' fraud claim is premised on alleged representations or promises that the Jobber Agreement would be the start of a "long[-]term relationship." *See* Am. Compl. ¶¶ 37, 39, 43. The Jobber Agreement, however, expressly authorizes Sherwin-Williams (and Pro Finishes, for that matter) to terminate the agreement without cause at any time on written notice. *See* Jobber Agreement ¶ 5.1.

The Jobber Agreement also informs its signatories not to rely on any representations to the contrary. It says that "[t]his Agreement embodies the entire understanding and agreement between the parties relative to the subject matter hereof, and supersedes any jobber agreements which may have been previously entered into" by the parties. *Id.* ¶ 6.9. It also instructs that the agreement "may not be modified, changed or supplemented except by a written instrument which is signed by an authorized representative of [both parties], which instrument shall state that it is a modification of the Agreement." *Id.* ¶ 6.6.

The Jobber Agreement is a fully integrated contract. Pro Finishes has proffered no authorized, signed, written modification to it. The alleged oral representations or promises, even if made, cannot become terms of the agreement. Nor can they support reasonable reliance -

- an essential element of a fraud claim. *See Harris v. Equilon Enterprises, LLC*, 107 F. Supp. 2d 921, 935-36 (S.D. Ohio 2000) (overruling motion for leave to amend complaint to state fraud and promissory estoppel claims as futile because "[u]nder Ohio law . . . [p]laintiff is precluded from relying upon prior or contemporaneous oral representations that vary or contradict the terms of his written agreements"); *Armstrong World Indus., Inc. v. Robert Levin Carpet Co.*, 1999 WL 387329, at *5 (E.D. Pa. May 20, 1999) (quoting *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996) (granting motion to dismiss fraud claim because "[t]he Pennsylvania parol evidence rule 'bar[s] consideration of prior representations concerning matters covered in the written contract, even those alleged to have been made fraudulently, unless the representations were fraudulently omitted from the contract'").

Pro Finishes cannot rely on oral assurances of a long-term relationship that directly contradict the at-will termination clause in the written Jobber Agreement. The parol evidence rule and Pro Finishes' inability to plead reasonable reliance bar its fraud claim.[4]

## V. Pro Finishes' Interference With Contractual Relations Claim Fails Because The Allegedly Offending Conduct Was Contractually Authorized.

To plead a claim for interference with contractual relations, Pro Finishes must allege the (1) existence of a contract, (2) Sherwin-Williams' knowledge of the contract, (3) Sherwin-Williams' intentional procurement of the contract's breach, (4) lack of justification,

[4] Pro Finishes also fails to plead all of the elements of fraud. It fails to plead any single element with sufficient particularity. Pro Finishes cannot carry its Rule 12(b)(6) and 9(b) burdens with references to vague comments about a "long-term relationship" and little more. *See Scattergood v. Perelman*, 945 F.2d 618, 623 (3d Cir. 1991) (allegations fell short of 9(b) pleading standard). The elements of fraud include (1) a representation of a fact, (2) that is material, (3) made with knowledge of falsity or reckless disregard for the truth or falsity of the representation, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance on the representation, and (6) damages. *See Sammarco v. Anthem Ins. Co.*, 723 N.E.2d 128, 137-38 (Ohio Ct. App. 1998) (quoting *Burr v. Stark County Bd. of Commrs.*, 491 N.E.2d 1101, syllabus paragraph two (Ohio 1986)). Pro Finishes has failed to plead who made any representation of a "long-term relationship," when or where they made it, or even what was said. Nor does this or any other comment attributed to Sherwin-Williams rise to the level of a specific "representation of a fact." Pro Finishes nowhere alleges that any representation was "false." It does not allege "intent." Pro Finishes' fraud allegations amount to nothing more than an expression of disappointment that a hoped-for continuing relationship came to an end, coupled with generalized "beliefs" and suspicions about Sherwin-Williams' commercial motives. *See* Am. Compl., ¶ 44. This is not fraud.

and (5) resulting damages. *See Sammarco*, 723 N.E.2d at 136; *accord Hess v. Gebhard & Co.*, 769 A.2d 1186, 1194 (Pa. Super. Ct. 2001) (citations omitted), *rev'd on other grounds*, 808 A.2d 912 (Pa. 2002). Justifiable interference with a business relationship is not actionable, even if the interference causes damages. *See Sammarco*, 723 N.E.2d at 136-37.

Pro Finishes alleges that Sherwin-Williams intentionally interfered with Pro Finishes' contractual relationships by contacting Pro Finishes' customers and selling products to those customers directly. *See* Am. Compl., ¶ 48. But the Jobber Agreement expressly authorizes Sherwin-Williams to do just that. *See* Jobber Agreement ¶ 4.2.

In *Sammarco*, a group of physicians alleged that a health insurer interfered with their relationships with patients by terminating the insurer's contract with the physicians. The court held that the physicians failed to state a claim for tortious interference because the contract permitted the insurer to terminate the contract at any time with or without cause. "Committing an act specifically anticipated by the contract does not support a claim for tortious interference with a contract." 723 N.E.2d at 136-37.

Similarly, in *Bill Call Ford, Inc. v. Ford Motor Corp.*, 48 F.3d 201, 207 (6th Cir. 1995), the Sixth Circuit affirmed summary judgment for Ford on a dealer's tortious interference claim. The claim was based on comments by Ford to a prospective purchaser of plaintiff's dealership to the effect that the dealer's asking price was too high. The appellate court noted that the agreement between Ford and the dealer specifically gave Ford the right to counsel with prospective purchasers about price. 48 F.3d at 207; s*ee also Hess*, 769 A.2d at 1194-95.

Sherwin-Williams' conduct was contractually authorized and therefore "justified." Pro Finishes' claim for tortious interference must fail.

## VI. Pro Finishes' Misappropriation Of Trade Secrets Claim Fails Because No Trade Secrets Were Divulged And Because Sherwin-Williams' Conduct Was Contractually Authorized.

Pro Finishes alleges that Sherwin-Williams received information about Pro Finishes' customers and then sold paint to those customers directly. *See* Am. Compl. ¶¶ 54-60. To state a claim for misappropriation of trade secrets, however, Pro Finishes must plead facts that establish that (1) a trade secret exists, (2) the trade secret was acquired as a result of a confidential relationship, and (3) Pro Finishes was injured as a result of the unauthorized use of the secret. *See, e.g., Suarez Corp. v. Seta Corp. of Boca, Inc.*, 1991 WL 328029, at *7 (N.D. Ohio Sept. 16, 1991); *accord Gilbert v. Otterson*, 550 A.2d 550, 555 (Pa. Super. Ct. 1988). Pro Finishes has failed on all three counts.

First, Pro Finishes disclosed no "trade secrets" to Sherwin-Williams. For customer (or any other) information to qualify for trade secret protection, it must have been closely guarded. *See Plain Dealer v. Ohio Dep't of Ins.*, 687 N.E.2d 661, 672 (Ohio 1997); *Biomedical Innovations, Inc. v. McLaughlin*, 658 N.E.2d 1084, 1087 (Ohio Ct. App. 1995) (granting summary judgment on misappropriation claim because there was no evidence plaintiff took protective measures to guard the confidential nature of the alleged trade secrets); *Northeast Ohio College of Massotherapy v. Burek*, 759 N.E.2d 869, 878 (Ohio Ct. App. 2001) (same).[5]

While Pro Finishes alleges that it has "actively protected and guarded" its so-called "trade secrets," *see* Am. Compl., ¶ 16, the Amended Complaint itself and the terms of the Jobber Agreement belie that allegation. Pro Finishes does not allege that Sherwin-Williams

---

[5] By focusing on Pro Finishes' lack of efforts to protect its so-called "trade secrets," Sherwin-Williams does not concede that the customer information was "economically valuable" and "not readily ascertainable by competitors." Am. Compl., ¶ 15. Car dealers and body shops are listed in the yellow pages. Their names, phone numbers, and addresses are anything but secret. Their showrooms and body shops are visited by the public everyday.

somehow compelled Pro Finishes to disclose its customer information. Pro Finishes does not allege that the Jobber Agreement required Pro Finishes to divulge this information to Sherwin-Williams. Pro Finishes does not and cannot allege that it contractually or otherwise committed Sherwin-Williams to use (or not use) Pro Finishes' customer information in any way (or that it even asked). Pro Finishes disclosed the information voluntarily and without restriction. The information was so disclosed to a party contractually authorized to sell directly to Pro Finishes' customers and to terminate its contractual relationship with Pro Finishes at will.

Pro Finishes took no steps to protect its customer information. Such unguarded data are not trade secrets. For this reason alone, Pro Finishes' misappropriation claim should be dismissed. *See Northeast Ohio College of Massotherapy v. Burek*, 759 N.E.2d at 878 (affirming summary judgment for defendant on trade secret claim where plaintiff did not show that materials in question were trade secrets or that it had taken any steps to protect them as such).

Second, Pro Finishes alleges no confidential relationship between the parties. None existed. Pro Finishes failed to replead its breach of fiduciary duty claim presumably in acknowledgement of this fact.

Third, Pro Finishes cannot allege, as it must, that Sherwin-Williams "made unauthorized use" of any confidential information. *See Suarez Corp.*, 1991 WL 328029, at *8. The Jobber Agreement expressly authorized Sherwin-Williams to sell directly to Pro Finishes' customers, and, therefore, any such sales efforts could not be wrongful.

Pro Finishes trade secret claim fails for all of these reasons.

## VII. Pro Finishes' Claim For "Antitrust Violations" Merely Recites Groundless Legal Conclusions.

Pro Finishes' last count lists a string of antitrust terms, but it fails to allege an antitrust claim.

Pro Finishes says that Sherwin-Williams attempted to "monopolize through conspiracy," Am. Compl. ¶ 69; that it "engaged in unlawful activities in restraint of trade and commerce in violation of §§ 1 and 2 of the Sherman Act," *id.*, ¶ 70; and that "the agreement that [Sherwin-Williams] attempted to enforce with [Pro Finishes] is a violation of § 1 of the Sherman Act in that it is an unlawful restraint of trade." *Id.*, ¶ 70. Pro Finishes pleads legal conclusions and nothing more.

Pleading bare legal conclusions cannot survive a motion to dismiss. *See American Franklin Life Insur. Co. v. Galati*, 776 F. Supp. 1054, 1056 (E.D. Pa. 1991) ("The court need not accept the non-movant's conclusions of law . . . ."); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

Unpacking these conclusions (even just a little) reveals how empty Pro Finishes' antitrust allegations really are. Pro Finishes' pleads no antitrust injury. A private antitrust plaintiff must allege that it suffered an "antitrust injury," *i.e.*, "injury of a type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *see also City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 269 (3d Cir. 1998) (affirming dismissal of city's antitrust complaint because of absence of antitrust injury); *Midland Export, Ltd. v. Elkem Holding, Inc.*, 947 F. Supp. 163, 166 n.2 (E.D. Pa. 1996).

Pro Finishes pleads that it was "injured" when its customer information was "utilized against" it and Sherwin-Williams refused to sell it additional products. *See* Am. Compl. ¶ 76. But this injury does not "reflect the anti-competitive effect" of any antitrust violation. *Brunswick Corp.*, 429 U.S. at 489. This injury does not "stem[] from a competition-*reducing* aspect or effect of [Sherwin-Williams'] behavior." *Atlantic Richfield Co. v. USA*

*Petroleum Co.*, 495 U.S. 328, 444 (1990) (emphasis in original). It merely states the alleged consequences of the termination of a private contract. Pro Finishes alleges no antitrust injury.

This is not surprising. The termination of agreements like the Jobber Agreement does not cause antitrust injury. Pro Finishes "does not bring its claim either as a competitor or a consumer but as a distributor whose injuries resulted from the loss of its position as [a] sales representative." *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6 (1st Cir. 1999). "Because [Pro Finishes] injuries flow from the termination of its distributorship, and not from the anticompetitive effects" of any conduct on Sherwin-Williams' part, Pro Finishes "has not suffered an antitrust injury." *Id.*

Put injury aside. Pro Finishes has failed to plead any other of the elements of the antitrust claims to which Count VI makes passing (and conclusory) reference. To maintain its claim under § 1 of the Sherman Act, Pro Finishes would have to plead, among other things, facts that support the existence of a "contract, combination . . . , or conspiracy" that restrains trade in interstate commerce. 15 U.S.C. §1; s*ee also Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 922 F. Supp. 1055, 1060 (E.D. Pa. 1996), *aff'd*, 24 F.3d 430 (3d Cir. 1997).

"Independent action is not proscribed. A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 760 (1984). Pro Finishes nowhere alleges that Sherwin-Williams acted other than independently. No agreements, combinations, or co-actors of any kind are named. Nor is an identified restraint on trade or an adverse affect on competition pled. Indeed, Pro Finishes itself acknowledges the force of "significant" inter-brand competitors for auto-body paint sales, like PPG and DuPont. *See* Am. Compl., ¶¶ 8, 19.

To establish that Sherwin-Williams "attempted to monopolize through conspiracy" in violation of § 2 of the Sherman Act, Pro Finishes would have to show an unlawful

agreement, an overt act in furtherance of the conspiracy, and specific intent to monopolize. *United States v. Yellow Cab Co.*, 332 U.S. 218 (1947). Again, the Amended Complaint fails to plead facts supportive of these elements. No co-conspirators are identified. No acts are specified. Intent is not mentioned.

The offense of "attempted monopolization," as this Court has described it, also requires a showing of "predatory or anti-competitive conduct" and a "dangerous probability" that defendant would achieve "monopoly power." *Queen City Pizza*, 922 F. Supp. at 1060. Nothing in the Amended Complaint comes close to alleging these facts. Pro Finishes nowhere even alleges the market share of any alleged monopolists.

This Court has dealt with and dismissed similar claims before in words upon which we cannot improve: "The [amended] complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose." *Queen City Aviation, Inc. v. City of Allentown*, 1992 WL 131148, at *4 (E.D. Pa. 1992), *aff'd*, 993 F.2d 225 (3d Cir. 1993) (citation omitted). "When stripped to its essential allegations, the complaint does no more than state [Pro Finishes'] commercial disappointment at losing [Sherwin-Williams'] patronage . . . ." *Id.*

The mere termination of a distribution agreement does not an antitrust claim make. Pro Finishes' antitrust claim should be dismissed, as well.

## CONCLUSION

For these reasons, Sherwin-Williams' Motion to Dismiss the Amended Complaint should be granted.

Respectfully submitted

____________________________________

James M. Jones (No. 81295)
Curt Vazquez (No. 54897)
JONES DAY
One Mellon Center
500 Grant Street, 31st Floor
Pittsburgh, PA 15219
(412) 391-3939
John J. O'Donnell (No. 46462)
Joshua A. Gelman (No. 85438)
LAVIN, COLEMAN, O'NEIL, RICCI,
FINARELLI & GRAY
510 Walnut Street, 10th Floor
Philadelphia, PA 19106
(215) 627-0303
Attorneys for Defendant
Sherwin-Williams Automotive Finishes Corp.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Brief in Support of Defendant's Motion to Dismiss was served this _____ day of February, 2003, via First Class U.S. Mail, upon counsel of record for Plaintiffs, as follows:

John G. Bravacos, Esq.
PALMA SEGAL & SBARBARO, LLC
The Historic Samuel Barber House
107 South Church Street
West Chester, PA 19382-3252

_________________________________
One of the Attorneys for Defendant
Sherwin-Williams Automotive Finishes Corp.