**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| J.C.D., Inc. t/a J.L. Terrel's and Terrel's Pro Finishes, Inc.<br>Plaintiffs<br>v.<br>Sherwin-Williams Automotive Finishes Corp.<br>Defendant | :<br>:<br>: Civil Action No. 02-CV-2645<br>:<br>:<br>: Judge Surrick<br>:<br>:<br>: |

**ORDER**

AND NOW, this _____ day of _____, 2003, upon consideration of Defendant Sherwin-Williams Automotive Finishes Corp.'s Motion to Dismiss and Plaintiffs' reply thereto, it is hereby ORDERED and DECREED that Defendant's Motion is DENIED.

BY THE COURT:

_____, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| J.C.D., Inc. t/a J.L. Terrel's : | |
| and : | Civil Action No. 02-CV-2645 |
| Terrel's Pro Finishes, Inc. : | |
| Plaintiffs : | |
| v. : | Judge Surrick |
| Sherwin-Williams Automotive : | |
| Finishes Corp. : | |
| Defendant : | |

**Plaintiffs' Reply to Defendant's Motion to Dismiss**

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, Plaintiffs, J.C.D., Inc. t/a J.L. Terrel's and Terrel's Pro Finishes, Inc., ("Pro Finishes"), herein reply to the Motion of Defendant, Sherwin-Williams, to dismiss the action. In support of their response, Plaintiffs submit the accompanying Memorandum of Law and reply as follows:

1. Denied. The claims asserted by Pro Finishes against Sherwin-Williams are a result of the interaction between the parties. Some of the actionable conduct arose prior to the termination; some arose after the termination. The termination itself, while actionable, is not the focus of the claims.

2. Denied. The inference of this paragraph is deceptive. Sherwin-Williams terminated Pro Finishes because it wanted to take unfair advantage of the investment and success of Pro Finishes in the market. Exhibit B to the Amended Complaint is a copy of a letter sent by Sherwin-Williams Mid-Atlantic Regional Manager to one of Pro Finishes customers nine days after Pro Finishes was notified that it would be terminated, stating that Sherwin-Williams was opening a company owned facility to service the region. Such action is consistent with Pro Finishes claims and inconsistent with Sherwin-Williams inference that Pro Finishes was terminated, "after it stopped paying Sherwin-Williams for paint, . . ."

3. Denied. The terms of ¶4.2 the Jobber Agreement permit the sale by Sherwin-Williams to "any End User in any geographical area including the same geographical area which is serviced by Jobber." Such sale is not the destruction of pending agreements between Sherwin-Williams, Pro Finishes and its customers.

    4.    Denied. The Jobber Agreement does not permit the conduct in which Sherwin-Williams engaged. Such conduct is actionable.

    J.C.D., Inc. t/a J.L. Terrels and Terrels Pro Finishes, Inc. respectfully request this Court deny Defendant's Motion to Dismiss the Amended Complaint. A proposed order is attached.

    Respectfully submitted,

**PALMA & SBARBARO, LLC**

By: _____
John G. Bravacos, Esquire
Id. No. 53055
107 South Church Street
West Chester, PA 19382-3252
(610) 431-7300
Counsel for Plaintiffs
J.C.D., Inc. t/a J.L. Terrel's and
Terrel's Pro Finishes, Inc.

March 3, 2003

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| J.C.D., Inc. t/a J.L. Terrel's : | |
| and : | Civil Action No. 02-CV-2645 |
| Terrel's Pro Finishes, Inc. : | |
| Plaintiffs : | |
| v. : | Judge Surrick |
| Sherwin-Williams Automotive : | |
| Finishes Corp. : | |
| Defendant : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Reply to Motion to Dismiss, and all attachments thereto, were served this 3rd day of March, 2003, via first class mail, upon counsel for the defendant, as follows:

John J. O'Donnell, Esq.
Joshua A. Gelman, Esq.
LAVIN, COLEMAN, O'NEIL, RICCI,
FINARELLI & GRAY
10th Floor, 510 Walnut Street
Philadelphia, PA 19106

James M. Jones, Esq.
JONES, DAY, REAVIS & POGUE
One Mellon Center
500 Grant Street, 31st Floor
Pittsburgh, PA 15219

**PALMA & SBARBARO, LLC**

By: _____
John G. Bravacos, Esquire
Id. No. 53055
Counsel for Plaintiffs
J.C.D., Inc. t/a J.L. Terrel's and
Terrel's Pro Finishes, Inc.

March 3, 2003

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| J.C.D., Inc. t/a J.L. Terrel's : | |
| And : | Civil Action No. 02-CV-2645 |
| Terrel's Pro Finishes, Inc. : | |
| Plaintiffs : | |
| v. : | Judge Surrick |
| Sherwin-Williams Automotive : | |
| Finishes Corp. : | |
| Defendant : | |

### Memorandum in Opposition to Defendant's Motion to Dismiss

### Introduction

Pro Finishes filed the Complaint against Sherwin-Williams seeking recovery for damages sustained by Pro Finishes resulting from Sherwin-Williams conduct. Sherwin-Williams entered into the Jobber Agreement with Pro Finishes, entered into long term agreements with Pro Finishes and its customers, obtained trade secret data from Pro Finishes while claiming the information would be used to assist Pro Finishes in Pro Finishes' long term business strategy, and an ultimate sale to Sherwin-Williams, then failed to stock the materials Pro Finishes needed to deliver to its customers, refused to meet its obligations to grant credits and make payments to Pro Finishes, terminated the Jobber Agreement, used the trade secret information it had coerced Pro Finishes into disclosing, to offer a better price to Pro Finishes' customers, after informing those customers they could no longer do business with Pro Finishes. Sherwin-Williams may not lawfully do these things.

Pro Finishes sought to enjoin Sherwin-Williams from these wrongful acts, and to obtain compensation for its damages from Sherwin-Williams' wrongful conduct. Sherwin-Williams removed the matter to this Court and seeks to now have the Amended Complaint dismissed.

**Argument**

I.  *Pro Finishes alleged facts sufficient to withstand a Motion to Dismiss*.

Based upon the standard by which a motion to dismiss is viewed, by taking "all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 665 (3d Cir. 1988)*, cert. denied*, 489 U.S. 1065, 109 S. Ct. 1338, 103 L. Ed. 2d 808 (1989). And by using this memoranda opposing dismissal "to clarify allegations in the complaint whose meaning is unclear." *Maio v. Aetna, Inc.,* 221 F.3d 472, 485 n.12 (3d Cir. 2000), *citing*, *Pegram v. Herdrich,* 530 U.S. 211, 230 n.10, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000). The motion to dismiss may be granted only if Pro Finishes can prove no set of facts in support of its claims which would entitle it to relief. *See Conley v. Gibson,* 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

*See, Balderston v. Medtronic*, 152 F. Supp. 2d 772, 775-6 (E.D. Pa. 2001).

Pro Finishes has alleged in its Amended Complaint, facts that when proven, will entitle it to relief from Sherwin-Williams.

II  *Pro Finishes' Complaint States a Claim for Breach of Contract.*

A party bringing a cause of action for breach of contract must demonstrate the following: (1) the existence of a binding contract or agreement; (2) that the non-breaching party performed its contractual obligations; (3) that the other party failed to fulfill its contractual obligations without legal excuse; and (4) that the non-breaching party suffered damages as a result of the breach. *Garofalo v. Chicago Title Insurance Co.* (1995), 104 Ohio App.3d 95; *McIntyre v. Thriftco, Inc.* (May 17, 2001), Cuyahoga App. No. 77767.

Pro Finishes has alleged that it negotiated and entered into a Direct Jobber Agreement with Sherwin-Williams, ¶11; that Sherwin-Williams and Pro Finishes together entered into other agreements with customers to share expenses of sales discounts extending over a period of years, ¶21, that Sherwin-Williams failed to provide its portion of the rebate to Pro Finishes, ¶¶22, 23, 25, that Sherwin-Williams failed to stock products that Pro Finishes was required to provide to its customers, ¶26, that this activity was a breach of the Jobber Agreement and the policies and programs of Sherwin-Williams in effect at the time, ¶33.

2

Paragraph 3 of the Jobber Agreement expressly provided for the few obligations of Sherwin-Williams. It required that Sherwin-Williams "maintain an adequate stock of Products to service the needs of Jobber." Jobber Agreement ¶3.1. This it did not do. Pro Finishes has alleged in ¶26 that Sherwin-Williams failed to maintain an adequate stock of Products. The Jobber Agreement required Sherwin-Williams to "sell Products to Jobber in accordance with the policies and programs of SW which are in effect at the time of the purchase." ¶3.3  Pro Finishes has alleged that the "policies and programs in effect" were the agreements among Sherwin-Williams, Pro Finishes and its customers. Amended Complaint ¶33   Finally, Pro Finishes has alleged damages as a result. Amended Complaint ¶35.

Count I of the Amended Complaint must survive Sherwin-Williams' motion to dismiss.

### III    Pro Finishes' Complaint States a Claim for Fraud.

In order to establish a case of fraud, a plaintiff must prove all of the following: (1) a false representation; (2) knowledge by the person making the representation that it is false; (3) the intent by the person making the representation to induce the other to rely on that representation; (4) rightful reliance by the other to his detriment; and (5) an injury as a result of the reliance. *Oak Hill Investment Co. v. Jablonski* (1992), 78 Ohio App.3d 643, citing *Korodi v. Minot* (1987), 40 Ohio App.3d 1, 3.

Pro Finishes has alleged that Sherwin-Williams entered into the Jobber Agreement with Pro Finishes representing to Pro Finishes that they were commencing a long term relationship, ¶37, that Sherwin-Williams discussed exit strategies with Pro Finishes for Pro Finishes' owners to consider to plan the eventual sale of the business to Sherwin-Williams or its designee when Pro Finishes' owners no longer wanted to pursue the business, ¶38, that Sherwin-Williams, by entering into long-term agreements with customers and Pro Finishes, represented that the relationship between Pro Finishes and Sherwin-Williams would continue during the terms of the agreements with customers, ¶39, that Pro Finishes relied on these representations, provided trade secrets such as customer lists, expected customer purchases, and current material usage, and expended significant sums as a result, ¶¶41-43, that Sherwin-Williams entered into the Jobber Agreement to induce Pro Finishes to disclose trade secrets to Sherwin-Williams, to establish its own contacts with Pro Finishes customers and then to terminate Pro Finishes agreements for the purpose of avoiding risks and expenses in the area. ¶44

Pro Finishes' allegation of fraud are supported by the representations and promises made by Sherwin-Williams to obtain the trade secret data, and Sherwin-Williams conduct in joining in long term agreements with Pro Finishes and its customers. Sherwin-Williams made representations about the long term relationship by analyzing the customer base and offering an evaluation of its value for an exit strategy for Pro Finishes. In preparation for those discussions, Sherwin-Williams required Pro Finishes to execute a Confidentiality Agreement. [1]

Count II of the Amended Complaint must survive Sherwin-Williams motion to dismiss.

### IV   Pro Finishes' Complaint States a Claim for Tortious Interference with Contract or Business Relationship.

In Pennsylvania, the claim is Intentional Interference with Contractual Relations. In Ohio, it is referred to as Tortious Interference with Contract. In either jurisdiction, Pro Finishes has alleged facts sufficient to survive the motion to dismiss.

The elements of tortious interference with contract are "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 176.

Pro Finishes has plead a claim for interference with contractual relations by identifying the contracts, Sherwin-Williams's knowledge of the contracts, its intentional procurement of the contract's breach, its lack of justification and resulting damages. In alleging these facts, Pro Finishes has alleged that Sherwin-Williams, Pro Finishes and its customers were parties to agreements. Pro Finishes alleged that Sherwin-Williams knew of the agreements, as it was a party. Pro Finishes has alleged that Sherwin-Williams lacked justification. The interference was not justifiable.

Count III of the Amended Complaint must survive Sherwin-Williams motion to dismiss.

### V   Pro Finishes' Complaint States a Claim for Misappropriation of Trade Secrets.

The Ohio Uniform Trade Secrets Act, R.C. 1333.61 through 1333.69, provides for civil remedies, such as injunctive relief and damages, for the misappropriation of trade secrets. R.C. 1333.61 defines "misappropriation" as:

---

[1] A mostly illegible copy of a Confidentiality Agreement between Sherwin-Williams and Pro Finishes is attached as

> "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;
> "(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:
> "(a) Used improper means to acquire knowledge of the trade secret;
> "(b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;
> "(c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake."

That section also defines "trade secret" as:

> "[I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
> "(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> "(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

Pro Finishes has alleged that a trade secret exists, that trade secret was acquired as a result of the confidential relationship and that Pro Finishes was injured as a result of the unauthorized use of the secret. It has alleged that its trade secrets were demanded by Sherwin-Williams as a result of Sherwin-Williams's assisting Pro Finishes in long term planning in which Sherwin-Williams would purchase the business from Pro Finishes. ¶19  These trade secrets included the volume of paint purchased, the present purchaser, the present company from whom paint is purchased, the types of work done by these customers as well as other specific and individual facts including individuals and their histories.  ¶15.

Pro Finishes has alleged that Sherwin-Williams required plaintiffs to disclose specific contacts, purchasing history, purchasing plans, pricing expectations, current usage, installed proprietary equipment and other information protected as trade secrets, ¶56, that Sherwin-Williams induced Pro Finishes to disclose this information, ¶55, that Sherwin-Williams used the

Exhibit A.

5

information to the detriment of Pro Finishes, and that Sherwin-Williams' knowledge of these trade secrets permit it to unfairly compete directly with Pro Finishes ¶¶58-59.

Sherwin-Williams has again suggested that the trade secrets were information that could have been easily located in the Yellow Pages. Such is clearly not the case. No public source would be able to supply the specific information about the proprietary equipment being used by the major automotive finish users in the geographic area. Nor could any public source supply the terms of the agreements between the finish supplier and the end user.

Count IV of the Amended Complaint must survive Sherwin-Williams motion to dismiss.

VI      *Pro Finishes' Claim for Unjust Enrichment.*

To recover under the theory of unjust enrichment, the plaintiff must prove the following elements: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust for defendant to retain that benefit without payment. *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183. Additionally, unjust enrichment involves not only a loss by the plaintiff, but also the defendant must receive a gain. *See id.*

Pro Finishes has conferred a benefit on Sherwin-Williams. Pro Finishes converted the large automotive finish users to Sherwin-Williams throughout the territory. Sherwin-Williams received a gain. New customers and sales, and long term contracts to supply finishes sufficient to support a new company owned facility. Certainly Sherwin-Williams knew of the increase in sales it received. To Pro Finishes, the circumstances of the benefit to Sherwin-Williams, *i.e.*, termination of the Jobber Agreement, use of its own trade secrets against it, Pro Finishes' loss of customers, are such that it is unjust for Sherwin-Williams to retain that benefit without payment.

Nonetheless, the absence of authority that would permit the unjust enrichment claim to remain in the presence of the Jobber Agreement require Pro Finishes to concede that the unjust enrichment claim should be stricken.

VII     *Pro Finishes' Complaint States Claims for Violations of the Sherman and Clayton Acts.*

Sherwin-Williams met with Pro Finishes in August of 2001 in an attempt to divide customers with Pro Finishes. ¶19 Sherwin-Williams, as part of this plan, solicited trade secret

6

data from Pro Finishes and then terminated Pro Finishes and utilized those trade secrets to destroy Pro Finishes' business.

By eliminating the Jobbers and replacing them with company owned facilities, Sherwin-Williams reduces competition. By obtaining confidential trade secret information, then under pricing the Jobbers, Sherwin-Williams eliminates the competition. Once the Jobbers disappear, Sherwin-Williams will have consolidated its control of the market.

## Conclusion

For all the reasons included above, Pro Finishes respectfully requests that this Court deny Sherwin-Williams's Motion to Dismiss.

                                             Respectfully submitted,

                                          **PALMA & SBARBARO, LLC**

                        By: _____
                             John G. Bravacos, Esquire
                             Id. No. 53055
                             107 South Church Street
                             West Chester, PA 19382-3252
March 3, 2003                    (610) 431-7300
                             Counsel for Plaintiffs
                             J.C.D., Inc. t/a J.L. Terrel's and
                             Terrel's Pro Finishes, Inc.