IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.C.D., INC. t/a J.L. TERREL'S<br><br>and<br><br>TERREL'S PRO FINISHES, INC.,<br><br>Plaintiffs<br><br>v.<br><br>SHERWIN-WILLIAMS AUTOMOTIVE FINISHES CORP.,<br><br>Defendant. | Civil Action No. 02-CV-2645<br><br>Judge Surrick |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

**INTRODUCTION**

Sherwin-Williams Automotive Finishes Corp.'s moving papers identified the legal and factual shortcomings in the Amended Complaint. With one exception, Pro Finishes' opposition papers do not come to grips with the identified deficiencies. Instead, Pro Finishes repeats the allegations in the Amended Complaint or, in some cases, recasts those allegations in an effort to mask their insufficiencies.

The allegations of the Amended Complaint, like those of its predecessor, cannot support a claim for relief. Pro Finishes concedes that its unjust enrichment claim should be dismissed (the exception mentioned above). Ps' Opp. at 7. Pro Finishes' remaining claims should fare no better. Attempts to replead them (a third time) by brief should be rejected. This case should be dismissed.

**ARGUMENT**

Pro Finishes turns to its contract claim first. So will we. Pro Finishes argues that unspecified agreements that Pro Finishes entered into with third parties (but fails to attach to its

Amended Complaint) are somehow the Sherwin-Williams "policies and programs" identified in ¶ 3.3 of the Jobber Agreement -- the "policies and programs" promulgated by Sherwin-Williams for sales by Sherwin-Williams to Jobbers like Pro Finishes.  Ps' Opp. at 3.  But the plain language of ¶ 3.3 refers only to the terms under which "SW shall sell Products to Jobber."  The "policies and programs" language cannot be read to mean Pro Finishes' or any other Jobber's miscellaneous, unidentified contracts with third parties.

Pro Finishes also argues that Sherwin-Williams failed to maintain an adequate stock of products.  Ps' Opp. at 2-3.  The Amended Complaint, in passing, mentions that "the Huntingdon Valley branch did not stock the Dimension finishing products manufactured by [Sherwin-Williams] that [Pro Finishes] was required to provide to its customers."  Amended Complaint, ¶ 26.

But Pro Finishes nowhere identifies a single order that Sherwin-Williams did not or could not fill.  Nor does Pro Finishes connect the claimed failure to stock with any harm to Pro Finishes.  Indeed, Pro Finishes directly alleges, in the same paragraph, that it acquired the requested finishing products from another source.  *Id.*  Pro Finishes has not and cannot allege that it suffered a dollar of damages as a result of any alleged failure to stock.

Pro Finishes' fraud claim is similarly infirm.  Pro Finishes argues that it stated a claim for fraud because it alleged that it acted in reliance on Sherwin-Williams' representations about a "long-term relationship."  Ps' Opp. at 3- 5.  Pro Finishes' papers, however, nowhere mention the at-will termination clause of the Jobber Agreement.  Nor do they address the bar of the parol evidence rule to any claim based on representations that vary or contradict the at-will termination clause.  Even if allegations of "long-term" association could be considered, they

could never support reasonable reliance.  The court so held in *O.E. Meyer v. BOC Group, Inc.*, 2000 WL 234549 at \*6 (Ohio Ct. App. March 3, 2000) (attached as Exhibit A).

Pro Finishes voices no response to the identified flaws in its fraud claim because it has none.  Its fraud claim should be dismissed.

When addressing its intentional interference with contractual relations claim, Pro Finishes' opposition papers do little more than restate the elements of the cause of action.  Ps' Opp. at 4-5.  Pro Finishes does not mention (and cannot deny) that the Jobber Agreement authorizes Sherwin-Williams to contact Pro Finishes customers and to sell products to those customers directly.  Pro Finishes has no response.  Its interference claims must fail.

Pro Finishes tries, but fails to breathe life into its misappropriation of trade secrets claim.  Its resuscitative effort falls short in the first place because the Amended Complaint does not allege *facts* to support Pro Finishes' claims that the customer information at issue was in fact a trade secret and that Sherwin-Williams misused the alleged trade secrets to Pro Finishes' detriment.

As Pro Finishes itself notes, "trade secrets" are not readily ascertainable by independent means. Ps' Opp. at 5.  While it is not clear whether Pro Finishes claims that the identity of its customers is a secret, common sense tells us there is no secret here.  Users of automotive finishes, like car dealers and body shops, are listed in the Yellow Pages.  Information about the "type of mix and application equipment a particular end user has installed" and the other "trade secrets" described in paragraph 15 of the Amended Complaint would be readily ascertainable by Sherwin-Williams from the customers themselves.  (Remember that the Jobber Agreement authorized Sherwin-Williams to deal directly with these customers.)

Moreover, the "trade secrets" were not disclosed in confidence, and no facts in the Amended Complaint support Pro Finishes' claim that it "actively protected and guarded" the alleged "trade secrets." Amended Complaint, ¶ 16. The facts that *are* alleged support only the opposite conclusion: Pro Finishes disclosed the alleged "trade secrets" to Sherwin-Williams even though it knew that Sherwin-Williams was permitted under the Jobber Agreement to do business directly with Pro Finishes' customers.

There are no allegations that Pro Finishes told Sherwin-Williams that it considered any information it imparted to be "trade secrets." There are no allegations that Pro Finishes asked Sherwin-Williams to treat any particular information as confidential or to sign a confidentiality agreement that would have protected such information from disclosure.[1] In short, the *facts* pleaded in the Amended Complaint do not support, and in fact contradict, Pro Finishes bare *allegations* that it disclosed "trade secrets" to Sherwin-Williams.[2]

Not only has Pro Finishes failed adequately to plead a trade secret, it has not pleaded that Sherwin-Williams has actually misused any such confidential information, or that Pro Finishes has actually been damaged by any misuse. The Amended Complaint simply alleges that possession of the alleged trade secrets "will permit" Sherwin-Williams to unfairly compete

---

[1] Pro Finishes attaches to its memorandum a confidentiality agreement. This agreement should be disregarded for purposes of the pending motion to dismiss because it is not attached or referred to in the Amended Complaint and also because it is largely illegible. Interestingly though, the agreement apparently *obligated Pro Finishes* not to disclose certain information provided by *Sherwin-Williams* to *Pro Finishes*. It did not reciprocally obligate Sherwin-Williams. Nor is there any allegation in the Amended Complaint that Pro Finishes ever requested similar guarantees of confidentiality from Sherwin-Williams.

[2] In its discussion of its trade secrets claim, Pro Finishes paraphrases the allegations in the Amended Complaint in an effort to improve their appearance. Ps' Opp. at 9-10. There are in the Amended Complaint, however, no allegations that the "trade secrets" were acquired "as a result of a confidential relationship"; that Sherwin-Williams has *actually* "used the information to the detriment of Pro Finishes"; that Pro Finishes has *actually* been "injured as a result of the unauthorized use" of the "trade secrets"; or that Sherwin-Williams "demanded" or "required" that Pro Finishes disclose its "trade secrets."

directly with Plaintiffs, Amended Complaint, ¶ 58 (of course, any competition by Sherwin-Williams with Pro Finishes is authorized under the Jobber Agreement), and that Sherwin-Williams' "use of the protected trade secrets will destroy" Pro Finishes' business, *id.*, ¶ 58.  While allegations of concern about the future might or might not have been relevant to Pro Finishes' abandoned request for an injunction, they do not support its sole remaining claim for damages.  Amended Complaint, at 9.[3]

Pro Finishes ends its piece with a discussion of its its "antitrust" claim.  We will close with it, too.  Here, in a nutshell, is the putative legal basis for Pro Finishes' "antitrust" claim:

> By eliminating the Jobbers and replacing them with company owned facilities, Sherwin-Williams reduces competition.  By obtaining confidential trade secret information, then under pricing the Jobbers, Sherwin-Williams eliminates the competition.  Once the Jobbers have disappeared, Sherwin-Williams will have consolidated its control of the market

Ps' Opp. at 7.  This is little more than jargon and loose theorizing.  There are no allegations in the Amended Complaint that Sherwin-Williams "eliminated" any Jobber, including Pro Finishes, or terminated an agreement with any Jobber but Pro Finishes.  Likewise, there are no allegations in the Amended Complaint that Sherwin-Williams "underpriced" any Jobber.[4]

Pro Finishes' comments about eliminating competition are simply empty conclusions.  They are not supported by the facts pleaded in the Amended Complaint.  Nor is Pro

---

[3] Pro Finishes also states in its brief that Sherwin-Williams "used the trade secret information it had coerced Pro Finishes into disclosing, to offer a better price to Pro Finishes' customers, after informing those customers they could no longer do business with Pro Finishes."  Ps' Opp. at 1.  There are no allegations in the Amended Complaint that Sherwin-Williams "coerced" Pro Finishes into disclosing anything; that it offered a lower price to Pro Finishes' customers; or that it told those customers they could not do business with Pro Finishes.

[4] For the record, there are also no allegations in the Amended Complaint that Sherwin-Williams "utilized [Pro Finishes'] trade secrets to destroy Pro Finishes' business."  Ps' Opp. at 7.

Finishes' expressed concern that, after the Jobbers "disappear," Sherwin-Williams will have completed its plan to take "control of the market."  These are fact-free accusations.

To pursue an antitrust claim, Pro Finishes must plead facts supportive of a recovery.  Facts that establish antitrust injury.  Facts that establish every other element of the Sherman Act violations that Pro Finishes claims have occurred.  Musings, speculation, and conclusions are not facts.  Pro Finishes' antitrust claim should be dismissed.

## **CONCLUSION**

For these reasons, Sherwin-Williams' Motion to Dismiss the Amended Complaint should be granted.

Respectfully submitted

_____
James M. Jones (No. 81295)
Curt Vazquez (No. 54897)
JONES DAY
One Mellon Center
500 Grant Street, 31st Floor
Pittsburgh, PA  15219
(412) 391-3939

John J. O'Donnell (No. 46462)
Joshua A. Gelman (No. 85438)
LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY
510 Walnut Street, 10th Floor
Philadelphia, PA  19106
(215) 627-0303

Attorneys for Defendant
Sherwin-Williams Automotive Finishes Corp.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Reply Brief in Support of Defendant's Motion to Dismiss was served this _____ day of March, 2003, via First Class U.S. Mail, upon counsel of record for Plaintiffs, as follows:

>John G. Bravacos, Esq.
>PALMA SEGAL & SBARBARO, LLC
>The Historic Samuel Barber House
>107 South Church Street
>West Chester, PA  19382-3252

_____
One of the Attorneys for Defendant
Sherwin-Williams Automotive Finishes Corp.

PII-1081511v1