IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.L. TERREL'S and  :  | |
| TERREL'S PRO FINISHES, INC.,  : | CIVIL ACTION |
| Plaintiffs  : | |
| v.  : | NO. 02-CV-2645 |
| :  | |
| SHERWIN-WILLIAMS AUTOMOTIVE  : | |
| FINISHES CORPORATION  : | |
| Defendant  : | |

**Surrick, J.**                                                                                                    **March 30th, 2004**

### MEMORANDUM & ORDER

Presently before the Court is Defendant Sherwin-Williams Automotive Finishes Corporation's ("Sherwin-Williams") Motion to Dismiss Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), (Doc. No. 18). For the following reasons, Defendant's Motion will be granted with respect to Plaintiffs' federal claims.

**Background**

Plaintiffs, J.C.D., Inc. t/a J.L. Terrel's and Terrel's Pro Finishes, Inc. (collectively "Plaintiffs"), commenced this action after Defendant terminated the parties' Direct Jobber Agreement ("Agreement"), under which, Plaintiffs had agreed to distribute Defendant's paint to their customers in southeastern Pennsylvania and Delaware. Plaintiffs filed a Complaint in the Chester County Court of Common Pleas alleging various state law claims and federal antitrust claims against Defendant. The Defendant removed the matter to this Court, pursuant to 28 U.S.C. § 1331, as Plaintiffs' antitrust claims provides us adequate subject matter jurisdiction. The Amended Complaint alleges violations of sections 1 and 2 of the Sherman Antitrust Act, 15

U.S.C. §1, et seq. ("Sherman Act"), and section 3 of the Clayton Act, 15 U.S.C. § 14.[1] Plaintiffs are citizens of Pennsylvania and Delaware. Defendant is a Delaware corporation, headquartered in Ohio, with its principal place of business in Pennsylvania. In July of 2000, the parties entered into an agreement which appointed Plaintiffs as non-exclusive "jobbers" to distribute Defendant's paint to Plaintiffs' commercial customers. (Am. Compl. Ex. A Agreement ¶ 1.) The Agreement specifically stated that Defendant was free to compete with Plaintiffs and to sell its own paint to whomever it wished including Plaintiffs' customers. (Id. ¶ 4.2.) The Agreement also provided that Defendant could "appoint, license and/or otherwise contract with additional jobbers in any geographical area including the same geographical area which is serviced by [Plaintiffs]." (Id. ¶ 4.1.)

The parties verbally agreed that Defendant would provide Plaintiffs with a combination of rebates and price discounts to assist Plaintiffs with the purchase of new equipment which Plaintiffs needed to mix and apply Defendant's paint. (Am. Compl. ¶ 14.) When Defendant failed to pay Plaintiffs these rebates as agreed, Plaintiffs were unable to pay for the paint purchased from Defendant. (Id. ¶¶ 24-25.) Upon Plaintiffs' failure to pay, Defendant refused to ship paint to Plaintiffs unless they paid cash on delivery, in lieu of paying for the paint on credit. (Id. ¶ 26.) As a result of Defendant's failure to ship the paint, Plaintiffs began buying paint from another of Defendant's jobbers. (Id.) This was presumably in violation of the contract, as the Agreement stated that Plaintiffs "shall purchase the [paint] from [Defendant]." (Am. Compl. Ex.

---

[1] The Amended Complaint also alleges state law claims for breach of contract, fraud, intentional interference with contractual relations, misappropriation of trade secrets and unjust enrichment.

A Agreement ¶ 2.2).

On March 6, 2002, Defendant contacted Plaintiffs both verbally and in writing to inform Plaintiffs that they were no longer authorized to distribute Defendant's paint. (Am. Compl. ¶ 27.) Termination of the contract was to take effect upon Plaintiffs' execution of a response letter. Though Defendant asked that the Agreement be terminated, Plaintiffs refused to execute the response letter. (Id.)  On April 3, 2002, Defendant sent a second letter to Plaintiffs terminating the Agreement as of May 3, 2002.  This termination was executed pursuant to paragraph 5.1 of the Agreement.[2]  (Id. ¶ 28.)

Plaintiffs also distributed the paint of Dupont, one of Defendant's competitors.  During the course of their relationship, Defendant told Plaintiffs that if it could have certain information about Plaintiffs' pricing, inventory and customers, it would not compete for the business of Plaintiffs' Dupont customers in Pennsylvania.  (Id. ¶ 19.)  Defendant also indicated that it would later purchase Plaintiffs' business, and convert the DuPont accounts to its own brand.  (Id.)

In Count VI of the Amended Complaint, Plaintiffs allege violations of sections 1 and 2 of the Sherman Act, and section 3 of the Clayton Act.  While Plaintiffs cite the proper federal statutes, the averments in the Amended Complaint do not state individual theories of antitrust liability or assign particular facts to the different statutory violations alleged.  Rather, Plaintiffs make general conclusory statements regarding Defendant's actions.  Plaintiffs allege that Defendant "attempted to monopolize through conspiracy the market for automotive finishes in

---

[2]Paragraph 5.1 of the Agreement reads: "This Agreement may be terminated without cause at any time by Jobber or [Defendant] by giving written notice to the other party at least thirty (30) days prior to the proposed termination date."  (Am. Compl. Ex. A Agreement ¶ 5.1.)

Southeastern Pennsylvania and the State of Delaware," (Id. ¶ 69), and that from August, 2001 through March, 2002, Defendant engaged in unlawful activities that restrained trade and commerce in violation of sections 1 and 2 of the Sherman Act. (Id. ¶ 70.) Plaintiffs contend that they were injured in violation of the antitrust laws when Defendant refused to sell any products to Plaintiffs and when Defendant, without compensation, used the competitive information which Plaintiff provided in expectation of being acquired. (Id. ¶ 75.) The issue before the Court is whether these allegations properly state claims under the federal antitrust laws.

**Standard of Review**

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "allow the non-movant the benefit of all reasonable inferences drawn from the allegations contained in the complaint and . . . accept these allegations as true." Breyer v. Meissner, 214 F.3d 416, 421 (3d Cir. 2000) (citing Lake v. Arnold, 112 F.3d 682, 684 (3d Cir. 1997)). "However, we are not required to accept legal conclusions alleged or inferred in the complaint." Id. (citing Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)). "A complaint will withstand an attack under Federal Rule of Civil Procedure 12(b)(6) if the material facts as alleged, in addition to inferences drawn from those allegations, provide a basis for recovery." Id. (citing Menkowitz v. Pottstown Memorial Med. Ctr., 154 F.3d 113, 115 (3d Cir. 1998)).

**Discussion**

**Section 1 of the Sherman Act**

Plaintiffs contends that Defendant has restrained trade in violation of section 1 of the Sherman Act. From the pleadings it appears that Plaintiffs believe that the agreement Defendant

attempted to enforce was an "exclusive dealing agreement" that violates the Sherman Act.[3]

Section 1 of the Sherman Act states in relevant part:

> "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal."

15 U.S.C. § 1. Because section 1 of the Act prohibits joint plans to restrain trade, a Plaintiff attempting to establish a section 1 violation must have *proof* of a conspiracy, or interdependent action used to restrain trade. Brooke Group, Ltd. v. Brown and Williamson Tobacco Corp., 509 U.S. 209, 251 (1993) (emphasis added). In distinguishing the type of conduct that constitutes a violation of section 1, the Supreme Court has drawn a distinction between independent action and action in concert with another. See Fisher v. City of Berkley, Cal., 475 U.S. 260, 266 (1986) (citing Montsanto Co. v. Spray-Rite Svc. Corp., 465 U.S. 752, 761 (1984)). Independent action does not constitute a violation of section 1. Fisher, 475 U.S. at 266.

Plaintiffs allege here that Defendant's efforts to enforce this agreement constitutes an unreasonable restraint of trade. Under the Agreement, Plaintiffs served as jobbers for Defendant. The Agreement included no provision with respect to pricing. Rather, the Agreement only ensured that Plaintiffs would distribute Defendant's products. We infer from the allegations that

---

[3] The Plaintiffs do not clearly state what theory of antitrust liability they have brought suit under. However, Plaintiffs' allege that Defendant attempted to "enforce an agreement with Plaintiff" and "allocate customers." (Am. Compl. ¶¶ 71, 75.) This language suggests that Plaintiffs believe that the Agreement was an unlawful vertical or horizontal agreement/restraint. Horizontal agreements are those among competitors on the same level of business, while vertical agreements are between entities operating on different levels, e.g., manufacturer and distributor. Brunson Communications, Inc. v. Arbitron, Inc., 239 F. Supp. 2d 550, 567 (E.D. Pa. 2002).

Plaintiff contends that this Agreement somehow unreasonably restrained competition.[4]

The allegations in the Amended Complaint do not state a claim under section 1 of the Sherman Act, as there is no sufficient allegation of interdependent behavior. Plaintiff alleges that "[b]eginning at the meeting of August, 2001 and continuing until March of 2002, Defendant, SWAF, engaged in unlawful activities in restraint of trade and commerce in violation of §1 and §2 of the Sherman Antitrust Act." (Am. Compl. ¶ 70.) In addition, Plaintiff alleges that "[t]he agreement that SWAF attempted to enforce with Plaintiffs is a violation of §1 of the Sherman Act in that it is an unlawful restraint of trade." (Id. ¶ 71.) These allegations are conclusory statements of law rather than factual pleadings that constitute a cause of action. See Brunson, 239 F. Supp. 2d at 559-60. The only concerted action alleged between two actors in the Amended Complaint is the Agreement between Plaintiffs and Defendants. (Am. Compl. ¶ 19.) We do not believe that the antitrust laws were enacted for the purpose of allowing a Plaintiff to bring suit where Plaintiff was complicit in the action which Plaintiff complains is illegal. If the Plaintiffs were unlawfully injured when Defendants cancelled the Agreement then they have a remedy in contract law, not under the antitrust laws.

**Section 2 of the Sherman Act**

Plaintiffs have alleged that Defendant has violated section 2 of the Sherman Act. Section 2 of the Sherman Act reads in relevant part:

---

[4]Agreement of this type are called vertical non-price restraints. Vertical non-price restraints are typically analyzed under the "rule of reason." Nynex Corp. v. Discon, Inc., 525 U.S. 128, 133 (1998). In the instant case we need not distinguish between a "per se" approach and a "rule of reason" approach as the allegations of illegal, anti-competitive behavior are so lacking.

> "Every person who shall monopolize, or attempt to monopolize or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony...."

15 U.S.C. § 2.  In the Amended Complaint, Plaintiffs fail to distinguish a claim of monopolization from a claim of attempted monopolize.  Unlike proving a claim under section 1 of the Sherman Act, a violation of section 2 can be found based solely on independent action.  Brooke Group, 509 U.S. at 251.  "To state a claim for monopolization, a plaintiff must allege (1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident."  Schuylkill Energy Res. v. Pa. Power & Light Co., 113 F.3d 405, 415 (3d Cir. 1997) (citing Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 197 (3d Cir. 1992)).  Alternatively, to state a claim for *attempted* monopolization under section 2, one must prove (1) that the defendant has engaged in predatory or anti-competitive conduct with; (2) a specific intent to monopolize; and (3) a dangerous probability of achieving monopoly power.  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 512 (3d Cir. 1994) (citing Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447 (1993)).

    Plaintiffs have not sufficiently alleged a violation of section 2.  Turning first to a possible claim of monopolization, the Amended Complaint contains no allegation that the defendant had monopoly power over the supply of automotive refinishing paint in southeastern Pennsylvania and Delaware.  Plaintiffs describe Defendant as "a manufacturer of high performance interior and exterior coatings ....  It serves automotive jobbers, ... body builders and original equipment manufacturers by its sale through one hundred seventy four company owned branches ...."  (Am.

Compl. ¶ 7.) With respect to Defendant's competition in the market, Plaintiffs' state that "[i]n addition to [Sherwin-Williams], DuPont, and PPG are significant manufacturers in the industry, and compete with [Sherwin-Williams]." (Am. Compl. ¶ 8.) Instead of showing that Defendant had monopoly power, these allegations show the opposite - that there was sufficient competition in the market. This conclusion is buttressed by the fact that when Sherwin-Williams began requiring Plaintiff to pay "cash on delivery," Plaintiff obtained refinishing paint through another source. (Id. ¶ 26.)

The facts proffered do not support a conclusion that Plaintiffs have sufficiently averred monopoly power. Alleging monopolization requires alleging "the strength of competition, probable development of the industry, the barriers to entry, the nature of the anticompetitive conduct, and the elasticity of consumer demand." Crossroads Cogeneration Corp. v. Orage & Rockland Util., Inc., 159 F.3d 129, 141 (3d Cir. 1998) (quoting Barr Lab., Inc. v. Abbott Lab., 978 F.2d 98, 112 (3d Cir. 1992) (internal quotation omitted)). Because Plaintiffs have failed to allege monopoly power, the claim against Defendant for monopolization under section 2 cannot be sustained. Plaintiffs also fail to allege a claim of attempted monopolization. To successfully state a claim of attempted monopolization, a plaintiff must allege: (1) that the defendant has engaged in predatory or anti-competitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. Crossroads, 159 F.3d at 141. Nothing in the Amended Complaint alleges any facts that go towards the probability of achieving monopoly power. See Brotech Corp. v. White Eagle Intern. Tech. Group, Inc., No. Civ. A. 03-232, 2003 WL 22797730, at *4 (E.D. Pa. Nov. 18, 2003) (citing Spectrum Sports, 506 U.S. at 456) (holding that in order to determine whether there is a dangerous probability of monopolization, courts

have found it necessary to consider the relevant market and the defendant's ability to lessen or destroy competition in that market.).  Plaintiffs provide no information with respect to Defendant's market share, and its ability to affect competition.  See Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997) (holding that "[w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.").  Since the Plaintiffs have failed to allege the third element of attempted monopolization there is no need to consider whether Plaintiffs sufficiently pled the first two elements of the claim.

**Section Three of the Clayton Act[5]**

Plaintiff also alleges a violation of section 3 of the Clayton Act, 15 U.S.C. § 14.[6]  Section 3 of the Clayton Act makes it unlawful "for any person engaged in commerce, in the course of such commerce to make tie-in sales or enter exclusive-dealing arrangements, where the effect may be to substantially lessen competition or tend to create a monopoly in any line of commerce."  Gulf Oil Corp. v. Copp Paving Co., Inc., 419 U.S. 186, 194 n.9 (1974) (quoting 15 U.S.C. § 14) (internal quotations omitted).  To state a claim under section 3 of the Clayton Act,

---

[5]The Clayton Act is generally regarded as imposing tighter restraints on exclusive dealing agreements than section 1 of the Sherman Act.  See Balaco, Inc. v. Upjohn Co., Civ. A. No. 92-0113, 1992 WL 131150, at *2 (E.D. Pa. June 3, 1992)

[6]Though Plaintiffs' Amended Complaint does not articulate its theory of liability under section 3 of the Clayton Act, we presume that based on the facts alleged, Plaintiffs are pursuing a claim of illegal exclusive dealing.

Plaintiffs must first allege the existence of an exclusive dealing contract. Balaco, Inc. v. Upjohn Co., Civ. A. No. 92-0113, 1992 WL 131150, at * 3 (E.D. Pa. Jun. 3, 1992). An exclusive dealing arrangement exists where the seller deals with the buyer only on the condition that the buyer agrees to purchase all of its product requirements from seller.

In the instant it is without question that Plaintiffs have not alleged the existence of an exclusive dealing contract. Plaintiff and Defendant entered into a *non-exclusive* contract such that Plaintiffs would serve as jobbers of Defendant's products. (Am. Compl. Ex. A ¶ 1.1.) The Agreement specifically provided that Defendants were still free to hire other jobbers in the same region. (Id. ¶¶ 4.1, 4.2.) There was nothing in the Agreement that limited Plaintiffs' ability to distribute the products of Defendant's competitors. (See Id. ¶ 1.1 ("[Defendant] hereby appoints [Plaintiff(s)] as a non-exclusive jobber of those automotive refinish products distributed by [Defendant] ....").) As there is no *exclusive* agreement there is no danger that competition was unreasonably foreclosed. In fact, in August 2001, over a year after signing the Agreement with Defendant, Plaintiffs were still buying and distributing DuPont products. (Am. Compl. ¶¶ 13, 19.) Plaintiffs cannot state a claim under section 3 of the Clayton Act.

**Conclusion**

Having disposed of Plaintiffs' federal claims there is no longer any independent basis for federal question jurisdiction. Nor is there any basis for diversity jurisdiction in this case. In situations such as this Congress has granted the courts discretion whether or not to exercise supplemental jurisdiction under 28 U.S.C. §1367(c). We decline to exercise supplemental jurisdiction over the state law claims.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.L. TERREL'S and | : | |
| TERREL'S PRO FINISHES, INC., | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | NO. 02-CV-2645 |
| | : | |
| SHERWIN-WILLIAMS AUTOMOTIVE | : | |
| FINISHES CORPORATION | : | |
| Defendant | : | |

**ORDER**

AND NOW, this 30th day of March, 2004 upon consideration of the Defendant's Motion to Dismiss Amended Complaint (Doc. No. 18) and all papers filed in support thereof and in opposition thereto, it is ORDERED as follows:

1. Defendant's Motion to Dismiss is GRANTED as to Count VI only;

2. We decline to exercise supplemental jurisdiction over the remaining state law claims; and

3. This case is remanded to the Court of Common Pleas of Chester County.

BY THE COURT:

_____

R. Barclay Surrick, Judge